**IN THE UNITED STATES DISTRICT COURT**
**FOR SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| FREEDOM WATCH, INC.<br>2020 Pennsylvania Ave, NW, #345<br>Washington, D.C., 20006<br><br>   Plaintiff,<br>v.<br><br>JUDICIAL WATCH, INC.<br>425 Third Street, SW, #800<br>Washington, D.C., 20024<br><br>and<br><br>THE AMERICAN CONSERVATIVE UNION<br>1331 H St NW, #500<br>Washington, D.C., 20005<br><br>   Defendants. | **COMPLAINT FOR VIOLATION OF SECTION 1 OF THE SHERMAN ACT(15 U.S.C. § 1) AND FL ST § 501.204** |

**I. INTRODUCTION**

1. Plaintiff Freedom Watch, Inc. ("Plaintiff" or "Freedom Watch") brings this Complaint against Defendants Judicial Watch, Inc. ("Judicial Watch") and The American Conservative Union ("ACU") (collectively, "Defendants"). Defendant Judicial Watch and ACU have entered into an agreement that constitutes an unreasonable restraint on trade and Defendants have conspired and colluded together to unlawfully limit competition from Plaintiff Freedom Watch. Specifically, in consideration of the past monies in excess of $100,000 and future monies that Defendant Judicial Watch has pledged to and will pay to Defendant ACU, Defendants entered into an agreement (the "Agreement") that Plaintiff Freedom Watch would be excluded from the Conservative Political Action Conference ("CPAC") as a sponsor and exhibitor and that Larry Klayman ("Mr. Klayman"), chairman of Plaintiff Freedom Watch, would not be allowed to speak at CPAC. This agreement between Defendants to deprive Plaintiff

1

Freedom Watch of an opportunity to compete constitutes (1) an illegal agreement in restraint of trade and (2) an illegal group boycott, which are both *per se* violations of the Sherman Act, 15 U.S.C. § 1. As a result of the illegal agreement between Defendants, Plaintiff Freedom Watch was deprived of a crucial opportunity to fundraise, increase reputation and goodwill, and fulfill its mission to disseminate information to the public.

**II.     JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction).

3. This Court has supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2), (3) in that Defendants are subject to personal jurisdiction in this District. Larry Klayman is a citizen and resident of Florida, a substantial part of Plaintiff Freedom Watch's supporters resides in Miami-Dade, and Broward counties, and several such Florida supporters and entities attended and sponsored CPAC. In addition, Plaintiff Freedom Watch, Defendant Judicial Watch, and Defendant ACU are registered to conduct business in this district, and in fact conduct business in this district.

**II.     PARTIES**

5. Plaintiff Freedom Watch is a 501(c)(3) organization founded by Mr. Klayman and formed under the laws of the District of Columbia with its headquarters in the District of Columbia. Mr. Klayman conceived of and founded Freedom Watch as a public interest government watchdog to investigate and prosecute government corruption and abuse and educate the public.

6. Defendant Judicial Watch is a 501(c)(3) organization formed under the laws of the District of Columbia with its headquarters in the District of Columbia. In 1994, Mr. Klayman founded Defendant Judicial Watch as a public interest government watchdog to investigate and prosecute government corruption and abuse and educate the public.

7. Defendant ACU is a 501(c)(4) organization formed under the laws of the District of Columbia with its headquarters in the District of Columbia. Among many conservative causes, Defendant ACU works to provide conservative positions on issues and educate Congress, the Executive Branch, State Legislatures, the media, political candidates, and the public.

8. The common missions of Plaintiff and Defendants are to further conservative principles, good government, respect for the rule of law, individual liberty, and freedom, and educate the public on the principles of our Founding Fathers. The three groups compete for support, goodwill, and fundraising from the public.

## IV.   STANDING

9. Plaintiff Freedom Watch has standing to bring this action because it has been directly affected and victimized by the unlawful conduct complained herein. Plaintiff's injuries are proximately related to the conduct of Defendants, each and every one of them, jointly and severally.

## V.   STATEMENT OF FACTS

### Background Facts

10. Mr. Klayman is a former U.S. Justice Department prosecutor and civil trial attorney.

11. Early in his legal career, Mr. Klayman worked as an Antitrust Lawyer for the U.S. Department of Justice ("DOJ").

12. During Mr. Klayman's tenure at the DOJ, he was on the trial team that broke up the AT&T monopoly and created competition in the telecommunications industry.

13. In 1994, Mr. Klayman conceived of, incorporated, and founded Defendant Judicial Watch to serve as a private Justice Department for the people, in effect a "True Independent Counsel," free from the influence of politics he had seen as a trial attorney at the U.S. Justice Department, restore and promote ethics in the government and in the legal profession, and educate the public.

14. During the approximately ten (10) years since Mr. Klayman conceived of, founded and led Defendant Judicial Watch, Judicial Watch grew from one office with a volunteer staff, a $28 million dollar plus, per annum, foundation with headquarters in Washington, D.C. and regional offices in Los Angeles, California; Chicago, Illinois; Dallas, Texas; Miami, Florida; and Norfolk, Virginia by the year 2000. Moreover, under Mr. Klayman's leadership, Defendant Judicial Watch achieved many notable successful verdicts and findings in courts throughout the U.S.

15. In 2003, a seat in the U.S. Senate opened in Mr. Klayman's home state of Florida. After representing many Florida citizens in legal matters, Mr. Klayman decided that he could be even more effective in his fight against corruption by being elected to the Senate.

16. After Mr. Klayman left Judicial Watch to run as a candidate for the U.S. Senate but was not successful, he founded Freedom Watch, with a similar mission to serve as a private Justice Department for the people, to remedy corruption and promote ethics in the government and legal profession, as well as educate the public on the matters set forth above in the preceding paragraphs.

17. After Mr. Klayman's departure from Defendant Judicial Watch in 2003 to run for the U.S. Senate, Thomas Fitton ("Mr. Thomas Fitton"), president of Defendant Judicial Watch appointed by Mr. Klayman, took control of the organization.

18. Since Mr. Klayman's departure from Judicial Watch, Judicial Watch and its directors – particularly Mr. Thomas Fitton - have engaged in a continuing pattern and practice of malicious, tortious, and illegal conduct against Freedom Watch and Mr. Klayman, whom Judicial Watch views as a threat and competitors.

19. Defendant Judicial Watch fears competition with Mr. Klayman and Freedom Watch, and as a result, has engaged in a pattern and practice of trying to prevent Mr. Klayman from doing business, promoting and fundraising for Freedom Watch, and appearing on television to promote and further Freedom Watch's mission, enhance its goodwill and reputation, and raise funds for the organization.

20. For instance, Defendant Judicial Watch, by and through the current President Mr. Fitton and his agents, including the other directors Paul Orfanedes and Christopher Farrell and their surrogates, tortiously interfered with Mr. Klayman's and Freedom Watch's relationship with the media by attempting to keep Mr. Klayman from appearing on CNN, CSPAN, and MSNBC, Fox News, Brietbart and other networks and media outlets, as part of its pattern and practice of interfering with Freedom Watch's efforts to increase its reputation, goodwill, and fundraising and its mission to disseminate information to the public.

21. In this regard, Mr. Klayman obtained a judgment for malicious defamation in Florida against Defendant Judicial Watch for compensatory and punitive damages in the amount of $181,000. Defendant Judicial Watch did not appeal the jury verdict because it had no factual or legal grounds on which to do so. See Exhibit A incorporated herein by reference.

22.     Defendant Judicial Watch has even demanded and threatened in the past that Mr. Klayman cease referring to himself as the founder and former chairman of Defendant Judicial Watch - which he is - claiming falsely that this would be an infringement of trademark and copyright law, as part of its pattern and practice of threatening Mr. Klayman and interfering with Freedom Watch's efforts to increase its reputation, goodwill, and fundraising and its mission to disseminate information to the public.

23.     Defendant Judicial Watch has disparaged Mr. Klayman and Freedom Watch before the Council for National Policy ("CNP"), a non-profit conservative organization that work to further, in large part, conservative principles, good government, respect for the rule of law, individual liberty, and freedom, and to educate the public. This disparagement has hindered Mr. Klayman's ability to rejoin CNP and therefore negatively affected Mr. Klayman and Freedom Watch's efforts to increase its reputation, goodwill, and fundraising and its mission to disseminate information to the public. A large number of wealthy donors to groups like Freedom Watch are members of CNP.

**Defendants Judicial Watch and ACU Entered into an Illicit *Quid Pro Quo* Agreement in Restraint of Trade**

24.     Defendant Judicial Watch has continued its pattern and practice of interfering with Freedom Watch's efforts to increase its reputation, goodwill, and fundraising and its mission to disseminate information to the public by entering into an illicit *quid pro quo* agreement with Defendant ACU to prevent Freedom Watch from having a presence at CPAC.

25.     Plaintiff Freedom Watch, Defendant Judicial Watch, and Defendant ACU are all direct competitors, as they each operate non-profit conservative organizations that work to further, in large part, conservative principles, good government, respect for the rule of law, individual liberty, and freedom, and to educate the public.

26. Defendant ACU is a non-profit organization headed by chairman Matthew Schlapp ("Mr. Schlapp") that hosts CPAC, an annual trade fair for conservative organizations.

27. Events such as CPAC are the lifeblood of Freedom Watch and similarly situated organizations that rely on enhancing their reputation and goodwill to fundraise and solicit donations to fulfill their mission to educate the public.

28. Defendant Judicial Watch is a lucrative donor to and sponsor of Defendant ACU.

29. Judicial Watch has donated over $80,000 to their organization just from 2013-2015.

30. Defendant Judicial Watch donated tens of thousands of dollars more in 2016.

31. On information and belief, Defendant Judicial Watch has given in excess of $100,000 to Defendant ACU since 2013.

32. In consideration of the past and future money, in excess of $100,000, that Defendant Judicial Watch has paid and has pledged and has plans to continue to pay to Defendant ACU, of which ACU is aware, Defendants entered into an Agreement that Plaintiff Freedom Watch would be excluded from CPAC as a sponsor and exhibitor and that Mr. Klayman, chairman of Plaintiff Freedom Watch, would not be able to speak at CPAC. This illicit *quid pro quo* agreement is in violation of the Sherman Act, 15 U.S.C. § 1, which prohibits restraints on trade.

**Freedom Watch Was Excluded from CPAC Pursuant to the Illicit Agreement Between Judicial Watch and ACU**

33. Mr. Fitton and Defendant Judicial Watch, along with the other directors of Judicial Watch - Mr. Orfanedes and Mr. Farrell and their agents and surrogates - have engaged in a pattern and practice of anticompetitive behavior that has culminated in the aforementioned illicit *quid pro quo* agreement with Defendant ACU to exclude and boycott their competitor,

7

Plaintiff Freedom Watch, from CPAC in exchange for Defendant Judicial Watch's contributions to Defendant ACU in excess of $100,000, as well as financial payments in the future.

34. In 2017, CPAC was held on February 22 – February 25, 2017 at the Gaylord National Resort & Convention Center ("Gaylord Resort") in National Harbor, Maryland.

35. Prior to CPAC, Plaintiff Freedom Watch contacted Defendant ACU about obtaining a sponsorship and booth and to have Mr. Klayman speak at CPAC to its attendees. Freedom Watch's presence at CPAC would have been instrumental and crucial in gaining exposure in the industry, creating contacts with the media, gathering donations and fundraising, increasing Plaintiff Freedom Watch's reputation and goodwill, and fulfilling its mission to disseminate information to the public.

36. Freedom Watch called and e-mailed Defendant ACU several times about obtaining a sponsorship and a booth at CPAC, as well as to have Mr. Klayman speak there on behalf of Freedom Watch. Defendant ACU never responded affirmatively.

37. Mr. Klayman then personally e-mailed and called Mr. Schlapp to be a sponsor and obtain a booth at CPAC, as well as to speak at CPAC, to which Mr. Schlapp never responded, despite repeated e-mails and calls.

38. Mr. Klayman then spoke directly to Dan Schneider ("Mr. Schneider"), the executive director of ACU, about obtaining a booth at CPAC and becoming a sponsor for 2017, as well as to speak at the conference.

39. Mr. Schneider informed Mr. Klayman that there were no sponsorships, booths, or speaking slots available but that someone on his behalf would contact Mr. Klayman with more details if something opened up.

40. Mr. Klayman followed up with Mr. Schneider and Mr. Schlapp multiple times, but was unable to reach Mr. Schneider again and Mr. Klayman never heard from anyone on Mr. Schneider's or Mr. Schlapp's behalf.

41. As an alternative, a Freedom Watch associate, at Freedom Watch's direction, attempted to book a hotel room for Freedom Watch at the Gaylord Resort in order to host supporters and also to organize a fundraising event.

42. A Gaylord Resort employee told the Freedom Watch associate that he would have to contact ACU and would get back to him about renting a room to Freedom Watch.

43. The Gaylord Resort informed the Freedom Watch associate two days later that organizations are unable to obtain a room and hold private events unless they are a sponsor of CPAC.

44. Mr. Klayman purchased an individual ticket online and attended CPAC in his individual capacity as a mere attendee and observed that there was a surplus of space available at the event and therefore there was no valid reason to exclude Freedom Watch as a sponsor from the trade fair.

45. Defendant ACU intentionally misrepresented to Freedom Watch the actual availability of booths and sponsorships at CPAC in order to exclude Freedom Watch from CPAC, pursuant to their illicit, *quid pro quo* Agreement with Defendant Judicial Watch, in violation of the Sherman Act, 15 U.S.C. § 1.

46. The Agreement between Defendants to exclude Plaintiff from CPAC was an unlawful agreement in restraint of trade to exclude Defendants' competitor, Freedom Watch, from the event and interfere with Freedom Watch's efforts to fundraise, increase reputation and goodwill, and fulfill its mission to disseminate information to the public.

47. In addition, Defendant Judicial Watch agreed with Defendant ACU to execute a group boycott, where Defendant ACU would not allow Defendants' competitor, Freedom Watch, become a sponsor at CPAC, or allow Mr. Klayman, the chairman of Freedom Watch, speak at CPAC, or allow Plaintiff to have a booth and display at CPAC.

48. Defendants entered into an Agreement to cut off Plaintiff Freedom Watch's access to a facility necessary to enable Plaintiff to compete.

## FIRST CAUSE OF ACTION
*Violation of Section 1 of the Sherman Act- Unlawful Agreement in Restraint of Trade (All Defendants)*

49. Plaintiff repeats and re-alleges all of the previous allegations of the entirety of this Complaint, including but not limited to the Introduction, with the same force and affect, as if fully set forth herein again at length.

50. Defendant Judicial Watch and Defendant ACU are each a horizontal competitor of Plaintiff Freedom Watch in the non-profit field.

51. Defendant Judicial Watch and Defendant ACU entered into an Agreement to exclude Plaintiff Freedom Watch from participating in the 2017 CPAC conference as a sponsor and exhibitor and to prevent Klayman, chairman of Plaintiff Freedom Watch, from speaking at CPAC.

52. The purpose or effect of the Agreement was to restrain competition.

53. The Agreement constitutes an unreasonable restraint on trade that are *per* se illegal under the Sherman Act, 15 U.S.C. § 1.

54. Defendants' Agreement to exclude Plaintiff Freedom Watch from the 2017 CPAC conference is facially anticompetitive because it interferes with Plaintiff Freedom Watch's ability to fundraise, increase reputation and goodwill, and fulfill its mission to disseminate

information to the public, and therefore prevents Plaintiff Freedom Watch from competing with Defendants.

55. The Agreement lacks legitimate procompetitive justifications. The Agreement has an anticompetitive effect on non-profit organizations and harms the competitive process. The anticompetitive effect of the restraint outweighed any beneficial effect on competition.

56. Plaintiff has been injured in its business by Defendants' antitrust violations. The injury to Plaintiff consists of losing crucial opportunities to fundraise, create important industry contacts with the media and industry contacts, increase reputation and goodwill, and fulfill its mission to disseminate information to the public.

57. In the alternative, Defendants effectuated their conspiracy by entering into agreement with one another to boycott their competitor, Plaintiff Freedom Watch. This conspiracy was a *per se* unlawful group boycott.

58. Plaintiffs demand that judgment be entered against Defendants, each and every one of them, jointly and severally, for an award of compensatory and actual damages, reasonable attorneys fees, pre-judgment interest, post-interest, and costs in an amount in excess of $5,000,000.

59. Plaintiff was injured in their business by Defendants' violation of antitrust law and the amount of damages awarded Plaintiff should be trebled in accordance with 15 U.S.C. § 15(a).

60. Plaintiffs demand that judgment be entered against Defendants, each and every one of them, jointly and severally, for an award of punitive damages in the amount of $40,000,000 and such other relief as the Court may deem just and proper.

**SECOND CAUSE OF ACTION**
*Violation of FL ST § 501.204 (All Defendants)*

61. Plaintiff repeats and re-alleges all of the previous allegations of the entirety of this Complaint, including but not limited to the Introduction, with the same force and affect, as if fully set forth herein again at length.

62. Defendants engaged in unfair methods of competition in the conduct of trade and commerce, in violation of Florida's State Consumer Protection laws.

63. Plaintiff has been injured in its business by Defendants' unfair methods of competition.

64. The injury to Plaintiff consists of losing crucial opportunities to fundraise, create important industry contacts with the media and industry contacts, increase reputation and goodwill, and fulfill its mission to disseminate information to the public, caused by Defendants' unlawful agreement to exclude Plaintiff Freedom Watch from CPAC.

65. Plaintiff demands that judgment be entered against Defendants, each and every one of them, jointly and severally, including an award of compensatory and actual damages, punitive damages, reasonable attorneys fees, pre-judgment interest, post-interest, costs, an award in excess of $5,000,000 and such other relief as the Court may deem just and proper.

WHEREFORE, Plaintiffs pray for relief and judgment against Defendant as follows:

(a) For general (non-economic), special (economic), actual and compensatory damages in excess of $10,000,000.

(b) For punitive damages in excess of $40,000,000.

(c) For treble damages, in accordance with 15 U.S.C. §15(a).

(d) Attorneys fees and costs.

(e) For equitable, declaratory, and injunctive and such other relief that this Court deems proper.

## DEMAND FOR JURY TRIAL

**Plaintiff demands a trial by jury on all counts as to all issues so triable.**

Dated: July 13, 2017

              Respectfully submitted,

              */s/ Larry Klayman*
              Larry Klayman, Esq.
              Freedom Watch, Inc.
              Florida Bar No. 246220
              2020 Pennsylvania Ave NW #345
              Washington, DC, 20006
              Tel: (561)-558-5536
              Email: leklayman@gmail.com

              Attorney for Plaintiff

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-20610-CIV-ALTONAGA

LARRY KLAYMAN,

    Plaintiff,

v.

JUDICIAL WATCH, INC.,

    Defendant.

_____/

## FINAL JUDGMENT

**THIS CAUSE** came for trial before the Court and a jury, United States District Judge, Cecilia M. Altonaga, presiding, and the issues having been duly tried and the jury having duly rendered its verdict on June 10, 2014, it is

**ORDERED AND ADJUDGED** that Judgment is entered in favor of Plaintiff, Larry Klayman, and against Defendant, Judicial Watch Inc., in the amount of **$156,000.00** for compensatory damages and **$25,000.00** for punitive damages, totaling **$181,000.00**, for which sum let execution issue. Requests for costs and attorneys' fees shall not be submitted until after any post-trial motions are decided or an appeal is concluded, whichever occurs later. This judgment shall bear interest at the rate as prescribed by 28 U.S.C. section 1961, and shall be enforceable as prescribed by 28 U.S.C. sections 2001–2007, 28 U.S.C. sections 3001–3308, and Federal Rule of Civil Procedure 69(a). The Clerk shall mark this case closed.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of June, 2014.

                                            _____
                                            CECILIA M. ALTONAGA
                                            UNITED STATES DISTRICT JUDGE

cc:    counsel of record

*Certified to be a true and correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida
By Lisa I. Streets
Deputy Clerk
Date 6-24-2016*