UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 17-22627-CIV-MORENO

FREEDOM WATCH INC.,

    Plaintiff,

vs.

JUDICIAL WATCH, INC. and THE
AMERICAN CONSERVATIVE UNION,

    Defendants.
_____/

## ORDER DISMISSING COMPLAINT

### Background

Plaintiff Freedom Watch is a politically conservative non-profit organization founded by Larry Klayman. Klayman is also the founder and former chairman of Defendant Judicial Watch, another non-profit conservative organization. Defendant American Conservative Union is also a non-profit conservative organization that hosts the Conservative Political Action Conference, an annual trade fair for conservative organizations. Plaintiff alleges that Defendants entered into an anticompetitive agreement to exclude Plaintiff from the Conference as a sponsor and exhibitor, and that Klayman would be prohibited from speaking at the conference. Plaintiff alleges that it attempted to obtain a sponsorship at the Conference and make arrangements to have Klayman speak on Plaintiff Freedom Watch's behalf. As a result of the agreement between Defendants, Plaintiff alleges that Freedom Watch and Klayman were excluded from the Conference. Plaintiff avers that this exclusion deprived the Conferences' attendees of the ability to learn more about Plaintiff Freedom Watch and potentially donate to its cause. In addition, Plaintiff submits that it

was deprived of the opportunity to increase its prestige, goodwill, and the ability to increase its business interests.

The Amended Complaint includes two counts. Count I is a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Count II is claim under Florida law for tortious interference with a prospective business advantage. Defendant Judicial Watch moves to dismiss the Amended Complaint with several procedural and substantive arguments, including: *forum non conveniens*, standing, and failure to state a claim upon which relief can be granted. Defendant American Conservative Union also moves to dismiss on two bases: standing and failure to state a claim upon which relief can be granted.

The Court denies the motion to dismiss finding that this district is a more adequate forum, but grants the motion to dismiss finding that Defendants have not engaged in commercial activity subject to the antitrust laws of the Sherman Act. The Court declines to exercise supplemental jurisdiction over the state law claim in Count II and dismisses that count without prejudice.

*Forum Non Conveniens*

Judicial Watch moves to dismiss based on *forum non conveniens* and asserts[1] that the District of Columbia is the more proper forum for this dispute because each party is formed and headquartered there, and the dispute arises from an alleged agreement regarding a conference held in the District of Columbia. "Under the doctrine of *forum non conveniens*, a district court has inherent power to decline to exercise jurisdiction over a case when an adequate, alternative forum is available." *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506-07 (1947)). *Forum non conveniens* is a tool generally used to dismiss a case because a more adequate forum in a **foreign jurisdiction**

---

[1] Judicial Watch does not explicitly state that the District of Columbia would be a more proper forum, instead Judicial Watch does so implicitly.

2

exists. *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097 (11th Cir. 2004) ("[T]here is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." (internal citation omitted)) (emphasis added). Accordingly, *forum non conveniens* is not the proper avenue to remove this case from the Southern District of Florida, because none of the facts involve a foreign jurisdiction.

Assuming *arguendo* that Defendant Judicial Watch's intent was to transfer venue pursuant to 28 U.S.C. § 1404, the Court finds that transfer is not warranted because the Southern District of Florida is the proper forum for this dispute. Judicial Watch has not explicitly stated which judicial district would be a more convenient forum for this dispute, but instead alludes to the connections the parties have with the District of Columbia, and seems to imply that the District of Columbia would be a more convenient forum for this suit. Moreover, Judicial Watch argues that the Florida connections Plaintiff relies on, including that a "substantial part" of Plaintiff's supporters reside in the Miami-Dade and Broward counties, that several Florida supporters and entities attended and sponsored the Conference, and that Defendants are registered to conduct business in Florida, are insufficient and irrelevant to the claims in this case. Plaintiff counters that even if Plaintiff indeed intended for the District of Columbia to be the alternative forum, Judicial Watch's justification that the Conference's location weighs in favor of the District of Columbia is misguided, because the Conference took place in Maryland, a judicial district separate from the District of Columbia.

Moreover, Plaintiff adds that the Southern District of Florida is best suited for this dispute because it is registered to do business in Florida and Judicial Watch has an office in Miami, Florida. Furthermore, a large portion of the evidence and possible witnesses, including

3

Plaintiff's donors who attended the Conference and would have donated to Plaintiff had it been permitted to attend, are located in the Southern District of Florida.

On a motion to transfer venue, the Court engages in a two-part inquiry. First, the Court must consider whether the case might have been brought in the transferee court. *Team Sys. Int'l, LLC v. AQuate Corp.*, No. 2:13-CV-427-KOB, 2013 WL 1346788, at *1 (N.D. Ala. Apr. 1, 2013). Second, the Court must ask whether the balance of factors under § 1404(a) weighs in favor of transferring this action to the transferee court. *Id.* The factors include: (1) convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; (9) trial efficiency and the interest of justice, based on the totality of the circumstances. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

Plaintiff could have filed suit in either the District of Maryland or District of Columbia. However, after balancing the § 1404(a) factors, the Court finds that neither the District of Maryland, nor the District of Columbia are adequate alternative forums. The Parties' only connection to the District of Columbia is that all three entities were formed and headquartered there. Similarly, their only connection to the District of Maryland is that the Conference takes place there. All other factors – namely potential witnesses' in the Southern District of Florida and Plaintiff's choice of forum – favor venue in the Southern District of Florida.

Antitrust standing generally has two requirements: (1) the plaintiff must have suffered an "antitrust injury" and (2) the plaintiff must be an "efficient enforcer" of the antitrust laws. *Duty*

4

*Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1273 (11th Cir. 2015). Antitrust injury is the injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful. *Id.* (internal quotations omitted).

Defendants argue the Amended Complaint should be dismissed because antitrust laws do not apply to charitable activity. Judicial Watch relies on *Dedication & Everlasting Love to Animals v. Humane Soc. of U.S., Inc.*, 50 F.3d 710, 712 (9th Cir. 1995) (*DELTA*), where the Ninth Circuit held that the Sherman Act did not extend to charitable fundraising. In *DELTA*, the plaintiff charitable organization charged the defendant charitable organization with a Sherman Act violation. *Id.* at 711. Both allegedly competed in a nationwide geographic market to raise funds for educating the public. *Id.* The plaintiff claimed damages in the form of lost donations because the defendant allegedly attempted to have the Attorney General of California take disciplinary action against the plaintiff and to have caused "providers of valuable services" to discriminate against the plaintiff. *Id.* The court found there was no market to raise funds for the "two animal-loving societies" and affirmed summary judgment in the defendant's favor because it "derives reputation, prestige, [and] money for its officers; it does not engage in trade or commerce; and so [there can be] no Sherman Act claim against it . . ." *Id.* at 714.

The Court finds that the Sherman Act does not apply to the allegedly illegal agreement between Defendants because the Conservative Political Action Conference is not "trade or commerce." Section 1 of the Sherman Act makes unlawful "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of **trade or commerce** among the several States[.]" 15 U.S.C. § 1. The Sherman Act was intended to prevent "restraints to free competition in business and commercial transactions" because those restraints tended to "restrict production, raise prices or otherwise control the market to the detriment of purchasers or consumers of goods

and services." *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 493 (1940); *see also Todorov v. DCF Healthcare Auth.*, 921 F.2d 1438, 1455 (11th Cir. 1991) ("Liability [under § 1 of the Sherman Act] will only attach to agreements designed unreasonably to restrain trade in, or affecting, interstate commerce . . ." (emphasis omitted)); *DELTA*, 50 F.3d at 712 ("Trade or commerce as used in the Act, therefore, necessarily relates to the business of the exchange of goods in the marketplace.").

Plaintiff suggests Defendant American Conservative Union engaged in commercial activity by selling sponsorship slots at the Conference, thereby triggering the Sherman Act. The Court disagrees. At its core, the Conservative Political Action Conference is nothing more than a gathering of individuals intending to raise funds, generate awareness for the conservative movement, and influence public officials to govern conservatively. Contrary to Defendants' contention, the Parties' legal status as nonprofit organizations is not dispositive. The crux of the issue is whether Defendants performed acts that were commercial in nature. They did not – the Conference is nothing more than a social event. In fact, this noncommercial activity is precisely what Congress intended to shy away from the auspices of antitrust regulation. *See Hamilton Chapter of Alpha Delta Phi v. Hamilton College*, 128 F.3d 59, 63 (2nd Cir. 1997) ("[T]he Sherman Act . . . was not intended to reach noncommercial activities that are intended to promote social causes.").

Furthermore, as the Supreme Court observed, "The proscriptions of the [Sherman] Act, tailored as they are for the business world, are not at all appropriate for application in the political arena." *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 141 (1961). "*Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365,

379 (1991). Lower courts have also been reluctant to apply antitrust laws to political activity. In *Council for Employment and Economic Energy Use v. WHDH Corp.*, 580 F.2d 9 (1st Cir. 1978), *cert. denied*, 440 U.S. 945 (1979), the plaintiff political committee, alleged that the defendant broadcasters had conspired in restraint of trade by agreeing on the amount of free advertising time to provide opponents of the plaintiff's position on a public initiative question. The court found that antitrust laws were not intended to regulate such activity, which it described as political rather than commercial. In *State of Missouri v. Nat'l Org. for Women, Inc.*, 467 F. Supp. 289 (W.D. Mo. 1979), *aff'd*, 620 F.2d 1301 (8th Cir. 1980), the court found that antitrust laws did not apply to the defendant's efforts to encourage political organizations to refrain from holding conventions in unratified states, because of its political, noncommercial nature.

Finally, in *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976 (D.C. Cir. Aug. 29, 2017), the court affirmed dismissal of two third-party presidential candidates' – Gary Johnson and Jill Stein – antitrust suit over their exclusion from the 2012 televised presidential debates. The court found that the plaintiffs were unable to define a commercial market in which they operate, as "the presidential campaign market," "the electoral politics market," and the "presidential candidates market," were no more regulated by the antitrust laws than the "marketplace of ideas" or "meet market." *Id.* at 983.

Coincidentally, Plaintiff's Amended Complaint likens its exclusion from the Conference to "a Republican or Democrat presidential candidate not being able to and prevented from attending the parties' national conventions to win supporters and further fundraising among major donors and the like." D.E. 23 at ¶ 38. "[A]ntitrust scrutiny [is not] triggered every time someone in an activity that involves or affects commerce contends that others have agreed to act in a way that fails equally to enhance the claimant's access to money." *Johnson*, 869 F.3d at 986

7

(Pillard, J., concurring). Even taking Plaintiff's well-pleaded allegations as true, which the Court must on a motion to dismiss, Plaintiff still does not allege any facts that could support its antitrust claims. Because there was no purpose on the part of Defendants to restrain competition in the market for Plaintiff's product, and the allegedly illegal agreement did not affect market price, the alleged restraint is not one prohibited by the Sherman Act, and Plaintiff has failed to show an antitrust injury. Accordingly, because Plaintiff did not suffer an antitrust injury, the Amended Complaint is dismissed for lack of standing. To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### State Claim of Tortious Interference with a Prospective Business Advantage

"The district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction." *Mousa v. Lauda Air Luftfahrt, AG*, 258 F. Supp. 2d 1329, 1346-47 (S.D. Fla. 2003) (Moreno, J.) (citing 28 U.S.C. § 1367(c)(3)). If all federal claims have been eliminated and only pendent state claims remain, the court generally should [dismiss] the case, even though federal question jurisdiction was originally proper. *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-51 (1988); *Levy v. City of Hollywood*, 90 F. Supp. 2d 1344, 1347 (S.D. Fla. 2000)). The factors to be considered under pendent jurisdiction – judicial economy, convenience, fairness, and comity – point toward declining jurisdiction over Plaintiff's remaining tortious interference with a prospective business advantage claim. Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claim (Count II) in the Amended Complaint and dismisses it without prejudice. Therefore, it is

**ADJUDGED** that the Motion to Dismiss is GRANTED and the Amended Complaint is DISMISSED.

DONE AND ORDERED in Chambers at Miami, Florida, this 26th of January 2018.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record